UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| **KEVIN KREMER,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**CITY OF DECATUR,**<br>**JAMES ANDERSON,**<br>**JOSH SHEETS, and**<br>**MARTIN ST. PIERRE,**<br><br>      **Defendants.** | Case No. 11-2258 |

## ORDER

In October 2011, Plaintiff Kevin Kremer filed suit against Decatur police officers Josh Sheets and Martin St. Pierre, individually and in their official capacities; Decatur police chief James Anderson, individually and in his official capacity; and the City of Decatur, for injuries he sustained when Sheets and St. Pierre arrested him in the early morning of October 28, 2009.[1] Specifically, Plaintiff brings, in Count I, excessive force claims under 42 U.S.C. § 1983[2] against all Defendants; in Count II, state assault and battery claims against all Defendants; in Count III, state unlawful use of excessive force claims against all Defendants; in Count IV, state claims for "failure to adequately train, instruct, correct, discipline, supervise, and train police officers" against Decatur and Anderson; and, in Count V, state claims for intentional infliction of emotional distress against all Defendants. Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff's § 1983 claims raise a federal question. The Court exercises supplemental jurisdiction over Plaintiff's state claims pursuant 28 U.S.C. § 1367(a). The parties have consented to proceed before a U.S. Magistrate Judge, as allowed by 28 U.S.C. § 636(c)(1).

---

[1] To the extent Plaintiff brings § 1983 claims against Sheets, St. Pierre, and Anderson in their official capacities, these claims duplicate his § 1983 claim against the City of Decatur, which the court analyzes under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014); *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

[2] Count I mentions 42 U.S.C. § 1985, but Plaintiff's "conspiracy claim is superfluous in light of the fact that all named defendants are state actors." *See Turley v. Rednour*, 729 F.3d 645, 649 & n.2 (7th Cir. 2013). ("[T]he function of a conspiracy claim under 42 U.S.C. § 1985(3) is to permit recovery from a private actor who has conspired with state actors. When, as here, the defendants are all state actors, a § 1985(3) claim does not add anything except needless complexity." (citations and internal quotation marks omitted)).

In March 2014, Defendants filed a Revised Motion for Summary Judgment (#47).[3] Plaintiff responded in opposition (#49). Defendants then submitted a reply in support of their motion (#50). At the Court's invitation, Plaintiff filed a surreply (#51) addressing whether his § 1983 claims undermine the validity of his convictions for his conduct during the incident and, therefore, run afoul of *Heck v. Humphrey*, 512 U.S. 477 (1994). After careful consideration of the parties' arguments and evidence, the Court **GRANTS** Defendants' Motion for Summary Judgment **(#47)** as to Plaintiff's claims under § 1983 and relinquishes jurisdiction over Plaintiff's claims under state law.

## I. Legal Standard

Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the substantive law applicable to a case "will identify which facts are material." *Id.* A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *accord Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The moving party bears the initial burden to "put[] forth evidence showing the absence of a genuine dispute of material fact." *Carroll*, 698 F.3d at 564. Once the moving party does so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Id.* In determining whether a genuine issue of material fact exists, the Court views all facts and draws all reasonable inferences in favor of the nonmoving party. *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012).

## II. Evidentiary Issues

The Court first addresses Plaintiff's challenges as to the admissibility of Defendants' evidence. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment.").

---

[3] Defendants' original motion and Plaintiff's response did not comply with Federal Rule of Civil Procedure 56 or local rules. The Court ordered (#45) the parties to submit revised briefing.

Plaintiff first asserts, with no explanation in support, that the transcript of his criminal trial for offenses committed during the October 28, 2009, incident is inadmissible hearsay. (#33-1, pp. 4-21.) Plaintiff was charged with Disarming a Peace Officer, Aggravated Battery, and Aggravated Resisting a Peace Officer. He appeared for a bench trial, where the prosecutor offered testimony that witnesses would have given, had they appeared, and Plaintiff stipulated to the introduction of that testimony. The judge found the evidence sufficient to convict Plaintiff on all three charges.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. *See* FED. R. EVID. 801(c). The Court understands Defendants to rely on the transcript not to prove the truth of the matter asserted in the stipulated testimony but to establish that Plaintiff's § 1983 claims are barred by *Heck* or, alternatively, collateral estoppel. Indeed, it appears that Courts often look to testimony from underlying state proceedings to decide whether *Heck* applies. *See, e.g., Okoro v. Callaghan*, 324 F.3d 488, 489 (7th Cir. 2003) (Plaintiff's § 1983 claim was barred by *Heck* because it was inconsistent with officers' testimony that "was an essential part of the evidence against him in the criminal case"); *Malden v. City of Waukegan, Ill.*, No. 04 C 2822, 2009 WL 2905594, at *10 (N.D. Ill. Sept. 10, 2009) ("[I]n finding a factual basis for the plea, the state court judge relied on the State's proffer of the testimony that Officer Kirby and another witness would provide-and, the defense stipulated that those persons would testify at trial in a manner consistent with the proffer. If [plaintiff] prevailed on those allegations in this civil case, he would undermine key elements of the offense to which he plead guilty, and indeed, would suggest that the factual basis on [which] the state court judge accepted his plea was false."). Therefore, the Court finds that the transcript is not hearsay and is admissible for the purposes offered by Defendants.

Next, Plaintiff contends that witnesses Tiffany Vandervort and Brandon Nein's statements to police are also inadmissible hearsay. Defendants counter that these statements are admissible under the public records exception in Federal Rule of Evidence 803(8), "which removes the hearsay bar for certain records and statements of public offices." *Jordan v. Binns*, 712 F.3d 1123, 1132 (7th Cir. 2013). The statements of Vandervort and Nein, although provided *to* police, do not fall within the public records exception because they were not made *by* police.

*See id.* ("The public-records exception is justified on the assumption that public officials will perform their duties properly and without bias."). Therefore, the Court does not consider those statements.

## II. Background

The following facts are undisputed unless otherwise indicated. Plaintiff was a customer at a bar on the night of October 27, 2009. Plaintiff's Dep. at 48 (#33-1, 33-2). He told the bartender that he wanted to have sex with her. Plaintiff's Dep. at 61. The bartender asked him to leave. *Id.* at 62. Plaintiff left and waited outside the bar. *Id.* The bartender called the police. Undisputed Material Fact 3. Defendants Sheets and St. Pierre arrived at the bar shortly thereafter. Plaintiff's Dep. at 71. They ordered Plaintiff to stand on the sidewalk, and Plaintiff did. *Id.* at 71-72. Sheets attempted to convince Plaintiff to leave the property, and Plaintiff refused. Undisputed Material Facts 5, 6.

Here, the parties' versions of events diverge. Plaintiff maintains that, after he refused to leave, the officers, without speaking to him further, turned around, walked five feet away from him, and then turned back to him and tased and maced him. Plaintiff's Dep. at 76-77. Plaintiff was never told he was under arrest or ordered to put his hands behind his back. *Id.* at 89-90. Sheets tased Plaintiff, and then St. Pierre tased Plaintiff. Undisputed Material Fact 10. Sheets then pepper-sprayed Plaintiff. Undisputed Material Fact 11.

Defendants, in contrast, assert that Sheets told Plaintiff he was under arrest and instructed him to turn around and put his hands behind his back. Sheets Dep. at 63 (#33-2). Sheets told Plaintiff to put his hands behind his back several times. *Id.* When Plaintiff did not comply, Sheets pulled out his taser and told Plaintiff that it was his last chance to comply. *Id.* at 65. When Plaintiff still refused, Sheets tased Plaintiff and, when the taser had no effect, St. Pierre tased Plaintiff. *Id.* at 67, 70. When St. Pierre's taser also appeared to have no effect, Sheets pepper sprayed Plaintiff. *Id.* at 71.

According to Plaintiff, the tasing and pepper spraying caused him to fall to the ground. Plaintiff's Dep. at 78-79. His face was burning and he was blinded. *Id.* at 79. He regained his

4

eyesight and saw an officer's pantleg next to him. *Id.* at 81. Plaintiff grabbed the pantleg to pull himself up, and the officer fell down behind Plaintiff. *Id.* Plaintiff and the officer wrestled. Plaintiff's Additional Material Fact 11 (citing Brandon Nein Dep. at 13). It is difficult to pin down Plaintiff's version of events at this point. In his Additional Material Fact 9 (citing Plaintiff's Dep. at 86), he states that he never grabbed Sheets's belt. However, in Additional Material Fact 14 (citing Brandon Nein Dep. Ex. 3), Plaintiff asserts, "Nein states he never saw Kremer's hand on the weapon, but only on the belt." Plaintiff is adamant, however, that he did not grab Sheets's gun: "Kremer's account of the events is clear. . . . Kremer denies having reached for or touching the gun." (#49, p. 16.) Plaintiff then heard a loud bang and felt fluid coming out of his body. Plaintiff's Dep. at 81.

Defendants maintain that Plaintiff remained standing after being tased and pepper sprayed. Sheets Dep. at 72. Sheets approached Plaintiff to perform a leg sweep maneuver to take him to the ground. *Id.* at 73. Sheets and Plaintiff fell to the ground. *Id.* at 74. Plaintiff grabbed Sheets's duty belt and gun. *Id.* at 77-78. Sheets wrestled with Plaintiff for control of the gun and shot Plaintiff. *Id.* at 82, 86.

Plaintiff was convicted of three offenses for his conduct during the incident on October 28, 2009: Disarming a Peace Officer, Aggravated Battery, and Aggravated Resisting a Peace Officer.

In his case before this Court, Plaintiff claims that Sheets used excessive force when he tased, pepper-sprayed, took to the ground, and shot Plaintiff, and that St. Pierre used excessive force when he tased Plaintiff. The Court pauses here to address Plaintiff's claim that Sheets used excessive force to take Plaintiff to the ground. Plaintiff's version of events is that he fell to the ground after being tased and maced, and that, as he was trying to pull himself up, Sheets fell to the ground, as well. Therefore, according to Plaintiff, Sheets did not attempt to take him to the ground at all. It is Defendants who assert that Plaintiff remained standing after he was tased and maced, Sheets attempted a leg sweep maneuver to bring Plaintiff to the ground, and both Plaintiff and Sheets fell. Therefore, accepting Plaintiff's version of events, Plaintiff cannot claim that Sheets used excessive force to take Plaintiff to the ground. Accordingly, the Court will

5

consider only whether Sheets used excessive force when he tased, pepper-sprayed, and shot Plaintiff.

Defendants raise the following challenges to Plaintiff's § 1983 claims: Plaintiff's § 1983 claims undermine the validity of his state convictions and are barred by *Heck*; Plaintiff's state convictions collaterally estop him from pursuing his § 1983 claims; Sheets and St. Pierre are shielded by qualified immunity; their use of force was objectively reasonable; and Chief of Police Anderson was not present for the incident at issue.

In response, Plaintiff argues that his claims are consistent with his state court convictions; collateral estoppel does not bar his claims because the issues raised in his state criminal case are not identical to those raised here; Sheets and St. Pierre's use of force was plainly excessive; and Anderson's presence at the incident is immaterial.

## III. Discussion
### A. Individual Capacity Claims under Section 1983

The Court first addresses Plaintiff's § 1983 excessive force claims against Sheets and St. Pierre in their individual capacities.

*Heck v. Humphrey,* 512 U.S. 477 (1994), dictates that "the plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon." *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). "A person convicted of resisting arrest or assaulting a police officer, however, is not precluded from bringing a § 1983 action for excessive force stemming from the same confrontation, so long as the § 1983 case does not undermine the validity of the criminal conviction." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761-62 (7th Cir. 2008) (citation and internal quotation marks omitted). For instance, a plaintiff's statement that he was "'peaceably waiting to be handcuffed' does not preclude or contravene the fact that he 'struggled while being handcuffed,' as set forth in the criminal complaint charge to which he pleaded guilty." *Id.* at 764. Likewise, a plaintiff is permitted to assume an "agnostic posture" toward his convictions: "An argument along the lines of 'The guards violated my rights by

injuring me, whether or not I struck first' does not present the sort of inconsistency that doom[s]" a § 1983 claim under *Heck*. *See Gilbert*, 512 F.3d at 902. Nevertheless, "a plaintiff is master of his claim," and if he insists on asserting facts that are inconsistent with his conviction, *Heck* bars his § 1983 claim. *See Moore v. Mahone*, 652 F.3d 722, 723-24 (7th Cir. 2011); *Okoro*, 324 F.3d at 490 ("Okoro adhered steadfastly to his position that there were no drugs, that he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit . . . . It is irrelevant that he disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit.").

To determine whether *Heck* bars Plaintiff's claim, the court "must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted." *Hardrick*, 522 F.3d at 762 (citation and internal quotation marks omitted). Plaintiff claims that Sheets used excessive force when he tased, pepper-sprayed, and shot Plaintiff, and that St. Pierre used excessive force when he tased Plaintiff.

Turning to his convictions, Count I, Disarming a Peace Officer, charged that Plaintiff, "without the consent of Josh Sheets, attempted to take a weapon, a handgun, from Josh Sheets, a person known to the defendant to be a peace officer, while Josh Sheets was engaged in the performance of his official duties." (#33-1, p. 1.) Count II, Aggravated Battery, charged that Plaintiff,

> in committing a Battery, in violation of Illinois Compiled Statutes, Chapter 720, Section 5/12-3, without legal justification knowingly made physical contact of an insulting or provoking nature with Josh Sheets, in that he grabbed the duty belt and handgun of Josh Sheets knowing Josh Sheets to be a peace officer engaged in the execution of his official duties.

7

(#33-1, p. 2.) Count III, Aggravated Resisting a Peace Officer, charged that Plaintiff

> knowingly resisted the performance of Josh Sheets of an authorized act within his official capacity, being the arrest of the defendant, knowing Josh Sheets to be a peace officer engaged in the execution of his official duties, in that he refused to comply with verbal commands of Josh Sheets, grabbed the handgun of Josh Sheets and struggled with Josh Sheets and said violation was the proximate cause of an injury to the hand and wrist of Josh Sheets.

(#33-1, p. 3.)

Plaintiff's position is partially consistent with his convictions: he admits that he wrestled with Sheets and appears to concede that he grabbed Sheets's duty belt. However, Plaintiff steadfastly insists on other facts that do imply the invalidity of his convictions.

Most significantly, he is adamant that he did not grab Sheets's gun, a position entirely inconsistent with his convictions for Aggravated Battery and Aggravated Resisting a Peace Officer. The stipulated testimony at Plaintiff's bench trial was that "[b]oth men [Sheets and Plaintiff] had their hand on the gun at the same time and struggled for control. Sheets yelled he's got my gun to alert St. Pierre to the - - as to the situation. Sergeant Sheets is able to get the muzzle of the gun pointed at the defendant, at which point he discharges his weapon . . . ." (#33-1, p. 17.) Plaintiff's assertion that he did not grab Sheets's gun dooms his claim that Sheets used excessive force when he shot Plaintiff. Sheets's use of deadly force was reasonable only if Plaintiff grabbed Sheets's gun, thereby putting Sheets or others at risk of serious bodily harm. *See Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003) ("Police may use even deadly force if the suspect poses a threat of serious physical harm, either to the officer or to others." (citation and internal quotation mark omitted)). Plaintiff's success on this claim would necessarily undermine the validity of his Aggravated Battery and Aggravated Resisting a Peace Officer convictions. Therefore, *Heck* bars Plaintiff's claim that Sheets used excessive force when he shot Plaintiff.

Plaintiff's position on the gun does not foreclose his claims that Sheets and St. Pierre used excessive force when they tased and pepper-sprayed him before he grabbed the gun. However, with regard to these claims, Plaintiff also insists on a version of events that undermines his Aggravated Resisting a Peace Officer conviction.

8

In the material fact section of his brief, Plaintiff, citing his deposition, asserts that Sheets and St. Pierre said nothing to him before they tased and pepper-sprayed him and never instructed him to put his hands behind his back. *See* Additional Material Fact 4, Plaintiff's Responses to Defendants' Material Facts 8, 9. These assertions are flatly inconsistent with his Aggravated Resisting a Peace Officer conviction, which charged that Plaintiff, knowing Sheets was in the act of arresting him, refused to comply with Sheets's verbal commands. However, in the argument section of his briefing, Plaintiff backs away from this position and concedes, "The officers found him to be non-compliant with directions to put his hands behind his back but that was after a very short discussion between them. There was simply inadequate time to conclude that Plaintiff was not cooperative." (#49, p. 14.) Plaintiff adds in his surreply:

> Even assuming that Kremer refused a verbal direction, the separate decision of Sheets to instantly escalate the use of force is a separate and distinct decision. Sheets admits that there was only 45 seconds between the time he spoke to Vandervort and was physically taking down Kremer. It cannot be argued that any subject standing outside a bar who is given a command and passively fails to follow that command should be tased, peppered [sic] sprayed, and physically tackled in less than 45 seconds. The fact of Kremer's passive, momentary resistance does not give the police the right to initiate the instantaneous and overwhelming force used on Kremer. Kremer was convicted of resisting in that he "refused to comply with verbal commands." It was not reasonable to fail to take additional time to talk to Kremer giving him verbal warnings of the actions being considered and adequately warning him of the consequences of further resistance, even if only passive.

(#51, p. 3-4.)

Ordinarily, where a party's evidence, such as a deposition, supports one factual position, and a lawyer's summary judgment brief another, the Court must rely on the version advanced in the deposition because a lawyer's "musings" are not evidence. *See Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002). For purposes of *Heck*, though, the Court evaluates whether a plaintiff truly insists on a version of events that is inconsistent with his convictions. *See Moore*, 652 F.3d at 724. Therefore, the Court will consider the argument in Plaintiff's briefs in order to give him every benefit of the doubt before concluding that his claims are barred.

9

Nevertheless, even the arguments in Plaintiff's briefs undermine the validity of his Aggravated Resisting a Peace Officer conviction. Plaintiff urges that Sheets and St. Pierre's "instantaneous" escalation of force was unreasonable because Plaintiff engaged in only "momentary resistance" and because Sheets and St. Pierre failed to give additional verbal directions and warnings. However, the stipulated testimony at Plaintiff's bench trial established that Plaintiff refused multiple commands and that Sheets did warn him verbally after Plaintiff refused to comply: "[Plaintiff] was told to put his hands behind his back and he refused. This instruction was repeated four or five times and he continued to refuse to comply. He [Sheets] removed his taser and advised the defendant he was going to be tased. The defendant still refused." (#33-1, pp. 16-17.) Therefore, Plaintiff's position that Sheets and St. Pierre unreasonably used their tasers and pepper spray because they did not give Plaintiff the opportunity to comply with verbal commands or warn him undermines the validity of his state convictions, and these claims are barred by *Heck*.

Plaintiff also brings an individual capacity claim against Chief of Police Anderson. Individual capacity claims under § 1983 require a showing that a defendant was personally involved in the alleged constitutional deprivation. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003) ("Because § 1983 does not allow actions against individuals merely for their supervisory role of others, individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue." (citation, internal quotation marks, and alteration omitted)). Plaintiff admits that Anderson was not present at the time of the incident (#49, p. 7) and points to no evidence to suggest he personally caused any constitutional deprivation. Therefore, Plaintiff's individual capacity claim against Anderson fails.

### B. *Monell* Claim Against Decatur

Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipal liability under § 1983 "only accrues if the tortfeasor inflicts a constitutional injury on the plaintiff in the execution of the government's policy or custom." *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014). Importantly, "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). Because Plaintiffs' claims against Sheets and

St. Pierre are barred by *Heck*, and Plaintiff's claim against Anderson fails for lack of personal involvement, no underlying constitutional violation exists to support *Monell* liability for Decatur.

### C. State Law Claims

Because the Court has disposed of Plaintiff's federal claims, it relinquishes jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). It is particularly appropriate to decline to exercise jurisdiction here because the parties have not briefed the merits of Plaintiff's state law claims. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007).

### IV. Conclusion

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment **(#47)** as to Plaintiff's federal claims. The Court relinquishes jurisdiction over Plaintiff's claims under state law, without prejudice to refiling in state court. The Clerk is directed to enter judgment in favor of Defendants on Plaintiff's federal claims. This case is terminated.

ENTERED this 13th day of August, 2014.

s/DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE